

1  ROBERT H. PLATT (Bar No. CA 108533)
   rplatt@manatt.com
2  MARK S. LEE (Bar No. CA 094103)
   mlee@manatt.com
3  DONALD R. BROWN (Bar No. CA 156548)
   dbrown@manatt.com
4  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
5  Los Angeles, CA 90064-1614
   Telephone: (310) 312-4000
6  Facsimile: (310) 312-4224

7  Attorneys for *Plaintiff*
   TICKETMASTER L.L.C.

8

```
                                      FILED
                            CLERK, U.S. DISTRICT COURT

                                  OCT 16 2013

                            CENTRAL DISTRICT OF CALIFORNIA
                            BY                        DEPUTY
```

9              UNITED STATES DISTRICT COURT

10         FOR THE CENTRAL DISTRICT OF CALIFORNIA

11  TICKETMASTER L.L.C., a Virginia          Case No. CV13-07630-DDW
    limited liability company,                        (AGRx)
12
                Plaintiff,                   COMPLAINT FOR:
13
         vs.                                 (1)    BREACH OF CONTRACT;
14                                           (2-3)  COPYRIGHT
    HIGS TICKETS, INC., a Massachusetts             INFRINGEMENT (17 U.S.C.
15  corporation, HIGS CITYSIDE                       § 101, *et seq.*);
    TICKETS, INC., a Massachusetts           (4-5)  VIOLATION OF DIGITAL
16  corporation, JOHN HIGGINS,                       MILLENNIUM COPYRIGHT
    PATRICK HIGGINS, and DOES 1                      ACT (17 U.S.C. § 1201, *et seq.*);
17  through 10, inclusive,                    (6)    FRAUD;
                                             (7)    AIDING AND ABETTING
18              Defendants.                          FRAUD;
                                             (8)    INDUCING BREACH OF
19                                                  CONTRACT; AND
                                             (9)    INTENTIONAL
20                                                  INTERFERENCE WITH
                                                    CONTRACT
21
                                             Demand for Jury Trial
22

23

24       Plaintiff Ticketmaster L.L.C. ("Ticketmaster") alleges the following

25  against defendants Higs Tickets, Inc., Higs Cityside Tickets, Inc., John Higgins,

26  Patrick Higgins, and Does 1-10 (collectively, "Defendants"):

27

28

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction over the federal claims in this Complaint pursuant to 28 U.S.C. Sections 1331 and 1338(a), and has jurisdiction over the other claims in this Complaint under California law pursuant to 28 U.S.C. Section 1367(a).

2.     This Court also has subject matter jurisdiction over all of the claims in this Complaint pursuant to 28 U.S.C. Sections 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.

3.     Venue is proper in this Court pursuant to 28 U.S.C. Sections 1391(b) and 1400 in that a substantial part of the events giving rise to the claims occurred in this judicial district, and Ticketmaster's principal place of business is within this judicial district.   In addition, the Terms of Use that govern the relationship between the parties provide for venue in state or federal court in Los Angeles County for disputes relating to the granting of a conditional license for use of Ticketmaster's website, which is the subject of this lawsuit.

**SUMMARY**

4.     Ticketmaster sells tickets for entertainment and sports events to the general public on behalf of its clients through a variety of means, including its website, ticketmaster.com.   To meet the demands of consumers and its own clients, Ticketmaster strives to provide an equitable ticket distribution system that affords all consumers a fair opportunity to acquire the best available tickets for events.   To that end, the Terms of Use for Ticketmaster's website prohibit the use of robots and other automated devices that give users of such devices an unfair advantage in searching for and buying tickets.   The website itself, in turn, employs a variety of security features, including a feature commonly known as CAPTCHA that is designed to detect automated devices and prevent them from accessing the website and purchasing tickets in violation of the Terms of Use.   Nonetheless, some users of

1    the website manage to evade those security features and use automated devices to

2    the detriment of Ticketmaster, its clients, and the general public.

3         5.     In that regard, Ticketmaster is informed and believes, and based

4    thereon alleges, that defendants John Higgins, Patrick Higgins, and Does 1-6 have

5    been using automated devices to access and navigate through Ticketmaster's

6    website and improperly procure tickets for the purpose of reselling them at a profit

7    through one or more websites of defendants Higs Tickets, Inc. and Higs Cityside

8    Tickets, Inc. (collectively, "Higs Tickets"), and through other means.  In doing so,

9    these defendants inundate Ticketmaster's website with page requests and ticket

10   reserve requests far in excess of amounts allowed under the Terms of Use.  Indeed,

11   these defendants often make hundreds of thousands of page requests per day, and at

12   times have made as many as 350,000 page requests in a single 24-hour period.  As

13   part of this conspiracy to circumvent Ticketmaster's security measures through the

14   use of prohibited automated devices, these defendants surreptitiously attempt to

15   conceal their identities by using a variety of account names, email addresses,

16   physical addresses, Internet Protocol (IP) addresses, and credit cards.

17        6.     Ticketmaster is also informed and believes, and based thereon

18   alleges, that Does 7-10 have assisted Higs Tickets and the individual defendants by

19   creating, marketing and providing automated devices that are designed to interact

20   with Ticketmaster's website, and also by providing ongoing assistance in the use of

21   those devices to breach the website's Terms of Use.   Although Ticketmaster

22   continues to upgrade its security features, Does 7-10 continue to create or employ

23   new devices or methods designed to circumvent those newly designed security

24   features.

25        7.     These deceptive and improper actions are harming Ticketmaster as

26   well as consumers who seek to lawfully purchase tickets through Ticketmaster's

27   website.  The use of automated devices, which can access and navigate a website

28   and complete tasks and transactions far more quickly than human users can,

1   deprives legitimate consumers of the opportunity to purchase tickets through
2   Ticketmaster, a problem that is compounded when, as here, users of these devices
3   purchase tickets in quantities far in excess of contractual per customer ticket limits.
4   The use of automated devices also circumvents Ticketmaster's technological copy
5   protection systems and results in the improper and unlicensed copying of pages
6   from the website.   In addition, the use of automated devices alters data on the
7   website and interferes with the website's operation, increases Ticketmaster's
8   operational costs, deprives Ticketmaster, its clients and its advertisers of various
9   revenue streams, and drives existing and potential customers away from
10   Ticketmaster by making it more difficult for them to obtain the tickets of their
11   choice through Ticketmaster.

12          8.      Ticketmaster therefore asserts claims against Defendants for breach
13   of contract, copyright infringement, violations of the federal Digital Millennium
14   Copyright Act, fraud, inducing breach of contract, and intentional interference with
15   contract.   As relief, Ticketmaster seeks an injunction, compensatory damages,
16   punitive damages, disgorgement of Defendants' ill-gotten gains, imposition of a
17   constructive trust, and recovery of attorneys' fees and costs incurred by
18   Ticketmaster to prosecute this lawsuit.

19                              **THE PARTIES**

20          9.      Plaintiff Ticketmaster L.L.C. is a Virginia limited liability
21   company with its principal place of business in Los Angeles, California.   The sole
22   member of Ticketmaster L.L.C. is Live Nation Entertainment, Inc., a Delaware
23   corporation with its principal place of business in Beverly Hills, California.

24          10.     Ticketmaster is informed and believes, and based thereon alleges,
25   that defendant Higs Tickets, Inc., is a Massachusetts corporation that is located in
26   Boston, Massachusetts.

27

28

1    11.    Ticketmaster is informed and believes, and based thereon alleges,

2    that defendant Higs Cityside Tickets, Inc., is a Massachusetts corporation that is

3    located in Boston, Massachusetts.

4    12.    Ticketmaster is informed and believes, and based thereon alleges,

5    that defendant John Higgins is an individual who resides in Boston, Massachusetts

6    and is the President and owner of Higs Tickets, Inc. and an officer and director of

7    Higs Cityside Tickets, Inc.

8    13.    Ticketmaster is informed and believes, and based thereon alleges,

9    that defendant Patrick Higgins is an individual who resides in Boston,

10    Massachusetts and is an officer and director of Higs Tickets, Inc.

11    14.    The true names, residences and capacities, whether individual,

12    corporate or otherwise, of defendants Does 1 through 10 are unknown to

13    Ticketmaster, and Ticketmaster therefore sues those defendants under such

14    fictitious names.  Ticketmaster is informed and believes, and based thereon alleges,

15    that each Defendant was, and is, an agent and employee of the remaining

16    Defendants, and in doing the things alleged herein, was acting within the course and

17    scope of such agency and employment and with the knowledge, consent and

18    approval of the other Defendants.  Ticketmaster is informed and believes, and based

19    thereon alleges, that each Defendant is responsible in some manner for the acts

20    alleged herein and for the damages that Ticketmaster has sustained.  Ticketmaster

21    will further amend this Complaint to show the true names and capacities of Does 1-

22    10 when they are ascertained.[1]

23    15.    Ticketmaster is informed and believes, and based thereon alleges,

24    that at all times mentioned herein, each Defendant conspired with, acted in concert

25    and active participation with, and aided and abetted every other Defendant in

26    committing the wrongful acts alleged in this Complaint.  Ticketmaster is further

---

[1]    Rule 19-1 of the Local Rules of the Central District of California imposes a
limit of ten Doe defendants.  Ticketmaster will seek leave to add defendants if the
current number the number of Doe defendants turns out to be insufficient.

1   informed and believes, and based thereon alleges, that each of the Defendants

2   knew, or consciously avoided knowing, that the other Defendants were engaged or

3   intended to engage in conduct that violated Ticketmaster's rights and also violated

4   federal and California law.

5   **FACTS**

6   **A.    Ticketmaster Attempts To Make Its Ticketing System As Fair And

7   Equitable As Possible For Consumers.**

8   16.    Ticketmaster distributes tickets for live entertainment events to the

9   general public on behalf of its clients, who are venues, promoters, entertainers and

10   sports franchises.  Ticketmaster sells tickets via retail ticket outlets, telephone call

11   centers, and Ticketmaster's website, www.ticketmaster.com.  Ticketmaster spends

12   substantial time, energy and resources attempting to ensure that its website is

13   current, accurate, easy to understand, and easy to use for the benefit of its clients

14   and the public.

15   17.    Demand for tickets sold through Ticketmaster, including via

16   ticketmaster.com, often exceeds the supply of tickets available for purchase.

17   Because Ticketmaster may only sell tickets that its clients have released to

18   Ticketmaster for sale, Ticketmaster cannot expand or adjust the supply of tickets at

19   any given time to meet the demand.  Moreover, Ticketmaster's clients set the price

20   of the tickets sold through Ticketmaster, and they oftentimes set those prices below

21   market.  All of these factors can inspire intense competition among consumers and

22   others to purchase tickets to the same event when the tickets become available for

23   sale on ticketmaster.com.

24   18.    Recognizing this competitive reality, Ticketmaster has undertaken

25   various measures to make the ticket buying process as fair and equitable as possible

26   for consumers.  For example, Ticketmaster attempts to regulate the speed with

27   which users may copy the web pages necessary to search for, reserve, and purchase

28

1   tickets on ticketmaster.com.  At its clients' request, Ticketmaster also limits the

2   number of tickets that may be purchased in any single transaction.

3        19.    In addition, Ticketmaster has undertaken substantial measures

4   intended to prevent the use of computer programs or other automated devices—

5   sometimes called software robots or "bots"—which can give users of such devices

6   an unfair advantage over human consumers in the ticket purchasing process.  One

7   of those measures is a security computer program, commonly known as CAPTCHA

8   ("Completely Automated Public Turing test to tell Computers and Humans Apart"),

9   that is designed to distinguish between human users and automated devices.  When

10  a user submits a ticket request, a box appears on the screen with random characters

11  partially obscured behind hash marks, which the user is instructed to retype in order

12  to proceed with the ticket request.  Most automated devices cannot decipher and

13  retype the random characters, and thus cannot proceed past that screen to complete

14  a ticket transaction.

15  **B.    Use Of Ticketmaster's Website Is Conditioned on Contractual Terms Of**

16  **Use.**

17       20.    Permission to view and use ticketmaster.com by any member of the

18  public is, and at all relevant times has been, conditioned on the user's agreement to

19  Terms of Use that are set forth on the website.  (A copy of Ticketmaster's current

20  Terms of Use is attached hereto as Exhibit "A.")

21       21.    To ensure that users are aware of and consent to the website's

22  Terms of Use, the Ticketmaster website repeatedly and systematically alerts users

23  to the existence—and the content—of the Terms of Use.  For example, at all

24  relevant times, the home page for ticketmaster.com has stated that, by continuing

25  past the home page, users consent to the Terms of Use for the website.  The phrase

26  "Terms of Use" in that statement on the home page is, and has been, a readily

27  visible hypertext link to the Terms of Use themselves that, when clicked, causes the

28  full Terms of Use to appear on the user's screen.  The same message and related

1   hyperlink to Ticketmaster's Terms of Use appear on almost every webpage on the

2   website.  Thus, at all relevant times, users have been repeatedly reminded that use

3   of the site is governed by the Terms of Use, and that continuing to use the site with

4   that knowledge constitutes acceptance of those Terms of Use.

5        22.    Furthermore, to purchase tickets through ticketmaster.com, users

6   have always been required to set up an account with Ticketmaster, and in doing so,

7   users have been instructed to review the website's Terms of Use.  At all relevant

8   times, it has been necessary as part of the account set-up procedure for the user to

9   expressly consent to the Terms of Use by clicking a button labeled "Accept and

10  Continue."  (A copy of the current version of the webpage with the "Accept and

11  Continue" button as part of the account set-up procedure is attached hereto as

12  Exhibit "B.")

13       23.    In addition, to complete a ticket purchase, users must click a

14  "Submit Order" button at the bottom of a Payment page.  The "Submit Order"

15  button is located directly above a statement that says, "By continuing past this page,

16  you agree to our Terms of Use," and embedded in this statement is a hyperlink that,

17  when clicked, causes the Terms of Use to appear on the user's screen.  (A copy of

18  the current version of the Payment webpage with the "Submit Order" button as part

19  of the ticket purchase procedure is attached hereto as Exhibit "C.")

20  **C.**    **The Terms of Use Grant a Limited License to View the Website and**

21      **Prohibit Abusive Use of the Site.**

22       24.    Ticketmaster's website is a work of authorship protected by

23  copyright law.  *See Ticketmaster L.L.C. v. RMG Tech., Inc.*, 507 F. Supp. 2d 1096

24  1104-11 (C.D. Cal. 2007).  Ticketmaster (or its predecessors) has registered

25  versions of its website or portions thereof, with the Copyright Office.  These

26  copyright registrations include the following:

27

28

| **Title** | **Registration No.** | **Date of Registration** |
|---|---|---|
| Ticketmaster.com: Online Order Search | TX-5-067-039 | May 30, 2000 |
| Ticketmaster.com: Order Information | TX-5-067-040 | May 30, 2000 |
| Ticketmaster.com Website Homepage, Event Ticket Order Pages | TXu-1-348-580 | May 22, 2007 |
| Event Ticket Order Validation Code | TXu-1-348-581 | May 22, 2007 |
| Event Ticket Order Limiting Code | TXu-1-348-582 | May 22, 2007 |
| Ticketmaster Interactive Seat Map Version 2012 | TX-7-628-432 | January 25, 2013 |

25. As described above, users who wish to purchase tickets through ticketmaster.com must navigate through a series of pages on the website by clicking on designated hypertext links on those pages. Viewing Ticketmaster's homepage and clicking on the hyperlinks to reach the various other pages that must be viewed to purchase tickets from the website causes copies of each of those pages to be created and to appear on a user's computer.

26. The current version of the Terms of Use (Ex. A hereto) includes a section called Ownership of Content and Grant of Conditional License. That section states in part as follows:

> We grant you a limited, conditional, no-cost, non-exclusive, non-transferable, non-sub-licensable license to view this Site and its Content to purchase tickets as permitted by these Terms for non-commercial purposes only if, as a condition precedent, you agree that you will not:
>
> • Use any robot, spider, offline reader, site search/retrieval application or other manual or automatic device, tool, or process to retrieve, index, data mine or in any way reproduce or circumvent the navigational structure or presentation of the Site or its contents, including with respect to any CAPTCHA displayed on the Site. . . .;

- Use any automated software or computer system to search for, reserve, buy or otherwise obtain tickets, *tm* ticket cash™, promotional codes, vouchers, gift cards or any other items available on the Site, including sending information from your computer to another computer where such software or system is active;
- Take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our infrastructure;
- Access, reload or refresh transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three-second interval;
- Request more than 1,000 pages of the Site in any 24-hour period, whether alone or with a group of individuals;
- Make more than 800 reserve requests on the Site in any 24-hour period, whether alone or with a group of individuals;
- Reproduce, modify, display, publicly perform, distribute or create derivative works of the Site or the Content;
- Use the Site or the Content in an attempt to, or in conjunction with, any device, program or service designed to circumvent any technological measure that effectively controls access to, or the rights in, the Site and/or Content in any way including, without limitation, by manual or automatic device or process, for any purpose.

27.     That section of the Terms of Use further states as follows:

This license is expressly conditioned on your preexisting agreement to comply with, and your actual compliance with, each of the provisions described in this Ownership of Content and Grant of Conditional License section. This license exists only so long as you strictly comply with each of the provisions described in this section. Any use of the Site or Content by you or anyone acting on your behalf that does not strictly comply with each and every provision in this section exceeds the scope of the license granted to you herein, constitutes unauthorized reproduction, display, or creation of unauthorized derivative versions of the Site and Content, and infringes our copyrights and other rights in the Site and Content. You will not acquire any ownership rights by using the Site or the Content.

28.     Thus, any use of the website that violates any of the various prohibitions in the Terms of Use—for example, using robots, spiders and other automated devices to improperly navigate the website and request, reserve and purchase tickets, making any other attempts to circumvent technological measures

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

intended to protect the website, and making excessive page and reserve requests—exceeds the scope of the user's limited copyright license.  Although the Terms of Use have been revised from time to time, for at least the past ten years every version of the Terms of Use has contained substantially similar prohibitions on the use of automated devices and other abusive use of the website.

29.    The Terms of Use also limit the number of tickets that a user may purchase for an event.  At all relevant times, the Terms of Use have contained a hyperlink to, and have expressly incorporated, Ticketmaster's Purchase Policy.  The hyperlink to Ticketmaster's Purchase Policy is easily visible and readily accessible in the first paragraph of the Terms of Use.  Clicking on the "Purchase Policy" hyperlink causes the full Purchase Policy to appear on the user's screen.

30.    The current version of the Purchase Policy states as follows:

> **Number of Tickets per Customer, or Ticket Limits.**
> When purchasing tickets on our Site, you are limited to a specified number of tickets for each event (also known as a "ticket limit").  This limit is posted during the purchase process and is verified with every transaction.  This policy is in effect to discourage unfair ticket buying practices.

31.    Previous versions of the Purchase Policy have contained a substantially similar provision.

32.    In sum, at all relevant times, the Terms of Use, including the Purchase Policy, have prohibited users from, among other things, using bots and other automated devices to access and navigate the site and conduct transactions, abusing the Ticketmaster system with excessive requests for web pages, including reserve requests, and purchasing tickets in excess of the per customer ticket limit.

**D.    Defendants Have Been Systematically Misusing And Abusing Ticketmaster's Website.**

33.    Based on information that Ticketmaster has discovered, compiled, and analyzed, Ticketmaster is informed and believes, and based thereon alleges, that John Higgins, Patrick Higgins, and Does 1-6, have been using or assisting in

the use of automated devices to navigate through ticketmaster.com and to purchase large quantities of tickets. A substantial volume of ticket purchases that implicate the use of automated devices has been made through accounts in the name of John and Patrick Higgins that are linked to credit cards, email addresses, web browser identification numbers, and Ticketmaster customer numbers and accounts that relate back to those defendants.

34.     It is unclear at this point whether John and Patrick Higgins have both used automated devices to make purchases themselves, or whether one or of them has knowingly allowed the other to use his identity, credit and debit cards, and Ticketmaster accounts to make such purchases, but both of them are liable in either event. Ticketmaster is informed and believes, and on that basis alleges, that other persons associated with Higs Tickets, Inc. and/or Higs Citywide Tickets, Inc. (collectively, "Higs Tickets") who are currently unknown to Ticketmaster are assisting John and Patrick Higgins in acquiring tickets from Ticketmaster through the use of automated devices. Those persons are named in this Complaint as Does 1-6.

35.     Ticketmaster's records show that during at least the past year, the Higginses and Does 1-6 have often made more than 100,000 page requests on Ticketmaster's website per day. In fact, on some days the number of requests has exceeded 300,000. And, as part of this scheme, these defendants have engaged in subterfuge through the use of multiple IP addresses, credit cards, and email addresses in an effort to conceal their identities and to conceal the location of these automated devices.

36.     Ticketmaster's records also show that these defendants have repeatedly and systematically made more than 800 reserve requests in applicable 24-hour periods—at times exceeding 50,000 reserve requests in a day—and have accessed, reloaded or refreshed transactional events or ticketing pages and made other requests to transactional servers more than once during applicable 3-second

1    intervals, all of which, along with the excessive page requests described above,

2    exceeds the scope of the license granted by Ticketmaster's Terms of Use.

3        37.    Ticketmaster is informed and believes, and based thereon alleges,

4    that many of these purchases involved ticket quantities in excess of stated per

5    customer ticket limits, and that most if not all of these wrongfully acquired tickets

6    were purchased for the commercial purpose of reselling them for a profit through

7    various means, including the Higs Tickets website.

8        38.    Throughout the course of their misconduct, the Higginses and Does

9    1-6 had ample opportunity to review Ticketmaster's Terms of Use, and they

10   repeatedly assented to those terms, expressly and impliedly.   Ticketmaster is

11   informed and believes, and based thereon alleges, that these defendants not only

12   expressly assented to the Terms of Use when creating various online accounts, but

13   that they regularly visited, or oversaw other persons in visiting, the website, and

14   during each visit they have been reminded of the Terms of Use and have been

15   invited to review them.  They also expressly reaffirmed their assent to the Terms of

16   Use when completing purchases of tickets.

17       39.    The misconduct of the Higginses and Does 1-6 has been facilitated

18   by Defendants Does 7-10.   Ticketmaster is informed and believes, and based

19   thereon alleges, that Does 7-10 have been developing, marketing and selling

20   software applications that enable users like the Higginses and Does 1-6 to employ

21   automated devices to unlawfully and improperly access Ticketmaster's website and

22   quickly purchase large quantities of tickets in violation of the website's Terms of

23   Use.  These automated devices are designed to, and do, circumvent CAPTCHA and

24   other security measures on Ticketmaster's website.

25       40.    Ticketmaster is informed and believes, and based thereon alleges,

26   that Does 7-10 visited ticketmaster.com with the commercial purpose of developing

27   their computer programs, and that they repeatedly visited the Ticketmaster

28   homepage and ticket purchase pages and thus were repeatedly reminded of the

1  governing Terms of Use each time they viewed a ticketmaster.com webpage.
2  Ticketmaster is also informed and believes, and based thereon alleges, that Does 7-
3  10 purchased tickets on ticketmaster.com when testing their computer programs,
4  and thus clicked on the "Accept and Continue" button on the ticket purchase page
5  with each purchase.  Each and every viewing of the ticketmaster.com homepage
6  and purchase page caused a copy of both pages to be created on their computers.

7      41.  Throughout this course of misconduct, the Higginses and Does 1-6
8  have attempted to evade Ticketmaster's efforts to prevent the use of prohibited
9  devices.  Although most automated devices cannot decipher and retype the random
10  characters generated by the CAPTCHA security program utilized on
11  ticketmaster.com, and thus cannot proceed past that screen to complete a ticket
12  transaction, some automated devices are designed to circumvent CAPTCHA, and
13  Ticketmaster is informed and believes, and based thereon alleges, that these
14  defendants have been using (or substantially assisting in the use of) such devices
15  for at least the past year.

16      42.  The Ticketmaster system sometimes can detect the presence of an
17  automated device, and when that occurs, the system generates a message to the user
18  explaining that the use of automated devices is prohibited.  Ticketmaster is
19  informed and believes, and based thereon alleges, that its system has generated such
20  messages in response to automated devices used by the Higginses and Does 1-6.
21  However, those defendants have ignored these messages and instead have
22  continued to use automated devices to navigate through the Ticketmaster website
23  and wrongfully acquire tickets.

24      43.  The Ticketmaster system also can temporarily disable an automated
25  device when such a device is detected.  Ticketmaster is informed and believes, and
26  based thereon alleges, that its system has from time to time temporarily disabled
27  automated devices used by the Higginses and Does 1-6.  However, Ticketmaster is
28  informed and believes, and based thereon alleges, that in each such instance, those

1  defendants simply deployed a new automated device from a different application

2  server and/or IP address and continued with their unauthorized use of the

3  Ticketmaster system.

44.     Ticketmaster diligently tries to identify users of prohibited

4  automated devices, but some users of these devices go to great lengths to deceive

5  Ticketmaster.  Ticketmaster is informed and believes, and based thereon alleges,

6  that the Higginses and Does 1-6 have used different names, credit cards and email

7  addresses to purchase tickets from Ticketmaster.  In addition, Ticketmaster is

8  informed and believes, and based thereon alleges, that these defendants have

9  systematically removed data from the computers they use to access

10  ticketmaster.com, such as by cleaning out the "cookies" on the computers, in a

11  further attempt to elude identification by Ticketmaster as repeat visitors to the site.

45.     Thus, it was not until recently that Ticketmaster was able to

13  assemble the information necessary to link John and Patrick Higgins with all of

14  these ticket purchases and the related use of prohibited automated devices.

**E.    Defendants' Misuse And Abuse Has Harmed Ticketmaster's Website And Operations.**

46.     Ticketmaster has been harmed, and continues to be harmed, by the

18  use of automated devices by Defendants and others.  To meet the demands of

19  consumers and its own clients, Ticketmaster must provide an equitable ticket

20  distribution system that affords all consumers a fair opportunity to acquire the best

21  available tickets for events.  The use of automated devices undermines this effort,

22  because automated devices can navigate through Ticketmaster's website and reserve

23  and purchase tickets at a speed that legitimate consumers cannot match.  As a

24  result, the inventory of tickets available to consumers who do not use such devices

25  is substantially diminished, which has led some consumers to question

26  Ticketmaster's ability to ensure a level playing field for the purchase of tickets.

47.     This harm is compounded by the fact that the use of automated devices inundates the Ticketmaster system with thousands of requests for tickets, and each request causes tickets to be temporarily placed on reserve, even if they are not ultimately purchased.  While a ticket is on reserve, it is unavailable to any other user of the site.  Not only does this further diminish the inventory of tickets for legitimate consumers, but it impedes Ticketmaster's ability to provide an important service to its clients.  Clients use the Ticketmaster system to monitor ticket sales activity to make a variety of decisions, including whether to open more seats for sale to the public or to move the seats to other distribution channels.  The artificially high volume of seats revolving in and out of reserve status due to the use of automated devices makes it difficult for Ticketmaster's clients to gauge how well tickets for an event are actually selling, which in turn interferes with the clients' ability to make the ongoing decisions that are based on sales activity.

48.     In addition, users of automated devices deprive Ticketmaster of revenue and revenue opportunities.  For example, Ticketmaster's website is part of a carefully crafted business model that integrates other services and features into the ticket purchasing process.  The website is designed so that users will follow certain steps and will be directed to view certain predetermined pages in the process of requesting and purchasing tickets.  Based on this expected flow of traffic, Ticketmaster, its clients, and others who place advertisements on Ticketmaster's website offer services and other opportunities on particular pages, ranging from event parking to signing up for client newsletters, all of which present an opportunity for immediate or future revenue.  However, automated devices, which do not use traditional browsers, bypass the HTML code for these features, with the result that users of those devices may never even view these offers.  These same offenders further exacerbate the problem by purchasing enormous quantities of tickets, which diminishes the ticket inventory for legitimate consumers and reduces

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

310686703.2

16

COMPLAINT

1  the number of legitimate consumers who will reach the pages that provide these up-

2  sell opportunities.

3       49.    Furthermore, by accessing the Ticketmaster system at targeted

4  points, automated devices alter the security features of the website itself.  Normally,

5  users receive automatic and temporary permission—in effect, a token—to make

6  requests on the system.  That token is automatically revoked if the pace of requests

7  exceeds a certain limit.  However, by systematically deleting cookies on the user's

8  system, automated devices enable the user to constantly assume a new identity and

9  acquire new tokens even though that same user is far exceeding the stated request

10  limit.

11       50.    All of these problems involve, in one way or another, unauthorized

12  reproduction and alteration of the Ticketmaster system, as well as deletion,

13  destruction and alteration of data on the system.

14       51.    Equally important, the use of automated devices diverts resources

15  from the service of legitimate consumers.  Ticketmaster must incorporate

16  extraordinary actions to enhance the website infrastructure to enable it to support all

17  of the activity on its website, including all of the artificial and inflated activity

18  generated by the automated devices, and otherwise ensure the ongoing integrity of

19  the website in the face of this onslaught of devices.  The use of these prohibited

20  devices also significantly increases the costs of, among other things, data storage,

21  computer processing, troubleshooting and system maintenance.

22

23              **FIRST CLAIM FOR RELIEF**
24              **Breach Of Contract**
         **(Against John Higgins, Patrick Higgins, and Does 1-10)**

25       52.    Ticketmaster alleges and incorporates by reference all of the

26  preceding paragraphs.

27       53.    At all relevant times, the home page and most other pages on

28  ticketmaster.com have informed users that their use of the website is subject to

1  express terms and conditions set forth in the Terms of Use, and that by continuing

2  past the page in question, the user expressly and/or impliedly agrees to be bound by

3  those terms. Users have a reasonable opportunity to review the Terms of Use upon

4  first entering the website, and they also have a reasonable opportunity to review the

5  Terms of Use during their use of the site. The link to the Terms of Use is displayed

6  in such a manner as to provide consumers with clear notice of their existence.

7      54.     Ticketmaster is informed and believes, and based thereon alleges,

8  that John Higgins, Patrick Higgins, and Does 1-6, acting for themselves, for each

9  other, and for Higs Tickets, expressly assented to the Terms of Use when setting up

10  accounts on ticketmaster.com and submitting requests to purchase tickets.

11  Ticketmaster is also informed and believes, and based thereon alleges, that Does 7-

12  10 expressly assented to the Terms of Use when creating accounts on

13  ticketmaster.com and submitting ticket requests.

14      55.     The Terms of Use prohibit, among other things, the use of bots and

15  other automated devices, abusive use of the website, and exceeding per-customer

16  ticket limits. These Terms of Use are fair and reasonable.

17      56.     Ticketmaster has performed all conditions, covenants and promises

18  required to be performed by it in accordance with the Terms of Use.

19      57.     Based on information that Ticketmaster has recently discovered

20  and compiled, Ticketmaster is informed and believes, and based thereon alleges,

21  that for at least the past year, John Higgins, Patrick Higgins, and Does 1-6, by use

22  of technology manufactured or otherwise provided by Does 7-10 (themselves also

23  bound by the Terms of Use), have repeatedly and systematically breached the

24  Terms of Use by using bots and other automated devices to access the website and

25  buy tickets, and by buying tickets in quantities that exceed per customer ticket

26  limits.

27      58.     Ticketmaster is further informed and believes, and based thereon

28  alleges, that to the extent any of John Higgins, Patrick Higgins, and Does 1-6 have

1    not used automated devices directly, they have each breached the Terms of Use (to

2    which all of the Defendants are bound) by allowing other Defendants to use their

3    identities, credit and debit cards, and Ticketmaster accounts to purchase tickets by

4    the use of automated devices and in quantities that exceed per customer ticket

5    limits.

6        59.    Ticketmaster is informed and believes, and based thereon alleges,

7    that as part of this misuse of Ticketmaster's website, John Higgins, Patrick Higgins,

8    and Does 1-10 (directly or in concert with other Defendants), repeatedly and

9    systematically requested more than 1000 pages of the website in applicable 24-hour

10   periods, made more than 800 reserve requests in applicable 24-hour periods, and

11   accessed, reloaded or refreshed transactional events or ticketing pages and made

12   other requests to transactional servers more than once during applicable 3-second

13   intervals.

14       60.    It can be impracticable and extremely difficult to ascertain the

15   damages from abusive use of Ticketmaster's website.  Therefore, Ticketmaster has

16   made a reasonable attempt at a formula for calculating the damages caused by

17   abusive use of its website.  The current version of the Terms of Use includes the

18   following liquidated damages provision that includes this formula:

19           You agree that your abusive use of the Site may cause
             damage and harm to us, including impaired goodwill, lost
20           sales and increased expenses. You also agree that
             monetary damages for your abusive use of the Site are
21           difficult to determine and that if you, or others acting with
             you, request more than 1,000 pages of the Site or make
22           more than 800 reserve requests on the Site in any 24-hour
             period, you, and those acting with you, will be jointly and
23           severally liable for liquidated damages in the amount of
             twenty-five cents ($0.25) for each page request or reserve
24           request made during that 24-hour period which exceeds
             those limits.
25

26       61.    Previous versions of the Terms of Use included a substantially

27   identical liquidated damages provision.  For example, the immediately prior version

28   stated as follows:

You agree that Abusive Use of the Site, as defined above, causes damage and harm to Ticketmaster in the form of, among other things, impaired goodwill, lost sales, and increased expenses associated with responding to Abusive Use of the Site. You further agree that monetary damages for Abusive Use of the Site are difficult to ascertain and that proof of monetary damages for Abusive Use would be costly and inconvenient to calculate. Accordingly you agree that liquidated damages are warranted for Abusive Use. Therefore, you agree that if you, or others acting in concert with you, alone or collectively request more than 1000 pages of the Site in any twenty-four hour period, you, and those acting in concert with you, will be jointly and severally liable for liquidated damages in the amount of twenty-five cents ($0.25) per page request each time that a page request is made after that first 1000 during that twenty-four hour period. You also agree that this will be the measure of damages for any abusive use that occurred prior to this provision of these Terms being in effect.

62.     Ticketmaster is entitled to liquidated damages in accordance with the foregoing provisions, in an amount to proven at trial when the full extent of these defendants' page requests and reserve requests is ascertained.  In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, as an alternative to liquidated damages, should the liquidated damages provision be unenforceable for any reason.

63.     The Terms of Use also provide that Ticketmaster is entitled to injunctive relief to enjoin violations of the Terms of Use.  The current version of the Terms of Use provides in part as follows: "You agree that monetary damages may not provide us a sufficient remedy and that we may pursue injunctive or other relief for your violation of these Terms." Previous versions of the Terms of Use have contained a substantially similar, if not identical, provision.

64.     The conduct of John Higgins, Patrick Higgins, and Does 1-10 has significantly and irreparably damaged Ticketmaster and will continue to do so unless restrained by this Court.  Thus, in addition to liquidated damages and other damages for abusive use of its website, Ticketmaster is entitled to the preliminary and permanent injunctive relief prayed for in this Complaint.

1

2 **SECOND CLAIM FOR RELIEF**
**Copyright Infringement, 17 U.S.C. § 101 *et seq.***
3 **(Against John Higgins, Patrick Higgins, and Does 1-6)**

4      65.     Ticketmaster alleges and incorporates by reference all of the

5 preceding paragraphs.

6      66.     Ticketmaster owns valid U.S. Copyright registrations in its website

7 and specific portions thereof.

8      67.     In using bots, programs, or other automatic devices on the

9 ticketmaster.com website to acquire tickets for the commercial purpose of reselling

10 them, John Higgins, Patrick Higgins, and Does 1-6 have acted in excess of the

11 terms of the license agreement created by Ticketmaster's Terms of Use, and thereby

12 copied or caused to be copied without authorization pages from the

13 ticketmaster.com site and other original elements of Ticketmaster's copyrighted

14 website.

15      68.     Ticketmaster is informed and believes, and on that basis alleges,

16 that, to the extent any of these Defendants did not use such automated devices

17 directly, they have induced and materially contributed to the infringing activities of

18 other Defendants, knowing of and directly benefiting from that infringing activity.

19      69.     As a proximate result of this direct, contributory, and vicarious

20 copyright infringement, and the inducement of others to infringe Ticketmaster's

21 copyrights by copying pages from ticketmaster.com in excess of its Terms of Use,

22 Ticketmaster has suffered and is suffering significant damage in an amount not

23 presently known with certainty, but which will be proven at trial.    Further,

24 Ticketmaster is suffering irreparable harm because of these defendants' infringing

25 activity.

26      70.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C.

27 §§ 502-505, including injunctive relief, an order for the impounding and destruction

28 of all copies of all bots, programs, or other automatic devices used by these

1    defendants to violate Ticketmaster's rights, compensatory damages in an amount to

2    be determined, statutory damages, and its costs and attorneys' fees.

3

4                         **THIRD CLAIM FOR RELIEF**
                    Copyright Infringement, 17 U.S.C. § 101 *et seq.*
5                              (Against Does 7-10)

6        71.    Ticketmaster alleges and incorporates by reference all of the

7    preceding paragraphs.

8        72.    Ticketmaster owns valid U.S. Copyright registrations in its website

9    and specific portions thereof.

10       73.    In creating, causing the use of, and using bots, programs, or other

11   automatic devices on the ticketmaster.com website to acquire tickets for the

12   commercial purpose of reselling them, Does 7-10 acted in excess of the terms of the

13   license agreement created by Ticketmaster's Terms of Use, and copied, caused to

14   be copied, and induced the copying without authorization of pages from the

15   ticketmaster.com site and other original elements of Ticketmaster's copyrighted

16   website. Ticketmaster is informed and believes, and on that basis alleges, that these

17   defendants had the right and ability to supervise the infringing activities of their

18   customers, and induced and materially contributed to the infringing activities of

19   their customers while knowing of and directly benefiting from that infringing

20   activity.

21       74.    As a proximate result of this direct, contributory and vicarious

22   copyright infringement by Does 7-10 and their inducement of others to infringe

23   Ticketmaster's copyrights by copying pages from ticketmaster.com in excess of its

24   Terms of Use, Ticketmaster suffered and is suffering significant damage in an

25   amount not presently known with certainty, but which will be proven at trial.

26   Further, Ticketmaster is suffering irreparable harm because of these defendants'

27   infringing activity.

28

75.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C. §§ 502-505, including injunctive relief, an order for the impounding and destruction of all copies of all bots, programs, or other automatic devices used by these defendants to violate Ticketmaster's rights, compensatory damages in an amount to be determined, statutory damages, and its costs and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.***
**(Against John Higgins, Patrick Higgins, and Does 1-6)**

76.     Ticketmaster alleges and incorporates by reference all of the preceding paragraphs.

77.     Ticketmaster is informed and believes, and based thereon alleges, that John Higgins, Patrick Higgins, and Does 1-6 are using bots, programs, or other technology, products, services, devices, components, or parts thereof, that are primarily designed and produced to circumvent the technological measures by which Ticketmaster effectively controls access to its copyrighted website, or, to the extent any of these Defendants are not doing so directly, they are actively participating the use of those devices by other Defendants.

78.     Ticketmaster is informed and believes, and based thereon alleges, that these bots, programs, or other technical devices have no commercially significant purpose or use other than to circumvent the technological measures that Ticketmaster uses to control access to its website, and that these defendants are using those devices with knowledge of that improper purpose.

79.     Ticketmaster has suffered and is suffering significant damages in an amount not presently known with certainty, but which will be proven at trial, as a proximate result of these defendants' above-referenced misconduct.

80.     Ticketmaster is entitled to the range of relief provided by 17 U.S.C. §§ 1201-1203, including injunctive relief, compensatory or statutory damages, and its costs and attorneys' fees in an amount to be proven at trial.

1

2

**FIFTH CLAIM FOR RELIEF**
**Violation Of Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.***

3

(Against Does 7-10)

4        81.      Ticketmaster alleges and incorporates by reference all of the

5   preceding paragraphs.

6        82.      Ticketmaster is informed and believes, and based thereon alleges,

7   that Does 7-10 are manufacturing, importing, trafficking in and using bots,

8   programs, or other technology, products, services, devices, components, or parts

9   thereof, that are primarily and intentionally designed and produced to circumvent

10   the technological measures by which Ticketmaster effectively controls access to its

11   copyrighted website.

12        83.      Ticketmaster is informed and believes, and based thereon alleges,

13   that these bots, programs, or other technical devices have no commercially

14   significant purpose or use other than to circumvent the technological measures that

15   Ticketmaster uses to control access to its website, and that these defendants are

16   creating, marketing, trafficking in and using those devices with knowledge that they

17   are being used for that purpose.

18        84.      Ticketmaster has suffered significant damages in an amount not

19   presently known with certainty, but which will be proven at trial, as a proximate

20   result of these defendants' actions as described herein.

21        85.      Ticketmaster is entitled to the range of relief provided by 17 U.S.C.

22   Sections 1201-1203, including injunctive relief, compensatory or statutory

23   damages, and its costs and attorneys' fees in an amount to be proven at trial.

24

25

**SIXTH CLAIM FOR RELIEF**
**Fraud**

26

**(Against John Higgins, Patrick Higgins, and Does 1-10)**

27        86.      Ticketmaster alleges and incorporates by reference all of the

28   preceding paragraphs.

87.     Defendants John Higgins, Patrick Higgins, and Does 1-6 have repeatedly accessed Ticketmaster's website, and in proceeding to use the website, represented to Ticketmaster that they would comply with the Terms of Use, and thus that they would not, among other things, use bots or other automated devices, abuse the website, or exceed per-customer ticket limits.

88.     Ticketmaster is informed and believes, and based thereon alleges, that these defendants, acting for themselves, for each other, and for Higs Tickets, clicked the "Accept and Continue" button on Ticketmaster's website when setting up online accounts and when completing ticket purchases, thereby representing to Ticketmaster that they would comply with the Terms of Use for the website, and thus that they would not, among other things, use bots or other automated devices, abuse the website, or exceed per-customer ticket limits.

89.     Each and every such representation was false. Ticketmaster is informed and believes, and based thereon alleges, that every time these defendants accessed and used the website, and every time they clicked the Accept and Continue button, they intended to, and did, violate the Terms of Use as described above and that each such instance by these defendants was also done on behalf of each other.

90.     Moreover, Ticketmaster is informed and believes, and based thereon alleges, that every time each of these defendants accessed and used Ticketmaster's website, they concealed from Ticketmaster their true intent to violate the Terms of Use.

91.     Ticketmaster is informed and believes, and based thereon alleges, that in an attempt to disguise the fact of so many purchases originating from the same source, these defendants misrepresented their identities when interacting with the Ticketmaster website and making many of the ticket purchases at issue.

92.     Ticketmaster relied on each such representation and omission by providing the information and services available on the website to all of these

1  defendants, including the sale to these defendants of substantial quantities of

2  tickets.

3       93.    Ticketmaster's reliance was reasonable.  These defendants received

4  ample notice of the Terms of Use every time they accessed and used the website,

5  and it has been necessary for them to click the Accept and Continue button both

6  when setting up online accounts and when completing a ticket purchase.

7       94.    As a result of these defendants' fraudulent representations and

8  omissions, Ticketmaster sold them tickets that Ticketmaster otherwise could have

9  sold to legitimate users of the site but was unable to due to defendants' misconduct.

10       95.    Moreover, Does 7-10, through their fraudulent representations and

11  omissions, obtained information about the workings and architecture of

12  Ticketmaster's website to assist in their design of prohibited automated devices.

13  They also used Ticketmaster's website to test their devices, which in turn have been

14  used by others to defraud Ticketmaster.

15       96.    As a proximate result of this fraudulent misconduct, Ticketmaster

16  has been damaged in an amount to be proved at trial.

17       97.    Ticketmaster is informed and believes that the conduct of John

18  Higgins, Patrick Higgins, and Does 1-10 was undertaken with the intent to injure

19  Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights,

20  and constitutes clear and convincing evidence of oppression, fraud and malice

21  under California Civil Code § 3294.  As a result, Ticketmaster is entitled to an

22  award of punitive damages against these defendants in an amount sufficient to deter

23  them from future misconduct.

24

25                      **SEVENTH CLAIM FOR RELIEF**

26                      **Aiding and Abetting Fraud**
                    **(Against all Defendants)**

27       98.    Ticketmaster alleges and incorporates by reference all of the

28  preceding paragraphs.

99.     Insofar as any of John Higgins, Patrick Higgins, and Does 1-6 did not use bots and automated devices to access Ticketmaster's website but instead lent their accounts, identities, and/or credit and debit cards to other Defendants with actual knowledge that the other Defendants would use them to help carry out their own fraudulent conduct toward Ticketmaster, such Defendants aided and abetted this fraud.

100.     Higs Tickets (which, as defined above, includes both Higs Tickets, Inc. and Higs Citywide Tickets, Inc.), in turn, aided and abetted all of this fraud by providing the infrastructure for John Higgins, Patrick Higgins, and Does 1-6 to make these fraudulent purchases through Ticketmaster, and doing so for the purpose of then reselling the fraudulently procured tickets through the Higs Tickets website for a profit.

101.     Does 7-10, in turn, aided and abetted all of the fraudulent misconduct alleged above, in that they had actual knowledge that their customers were acquiring their products and services for the purpose of defrauding Ticketmaster, and they provided substantial assistance to those customers, including John Higgins, Patrick Higgins, and Does 1-6, for this purpose by providing their products and services and counseling their customers how to exploit the Ticketmaster system.

102.     Thus, all of the Defendants are liable for all of the damages and harm that Ticketmaster has incurred by reason of the fraudulent misconduct alleged above.

103.     Ticketmaster is informed and believes that the conduct of the Defendants was undertaken with the intent to injure Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights, and constitutes clear and convincing evidence of oppression, fraud and malice under California Civil Code § 3294. As a result, Ticketmaster is entitled to an award of punitive damages against these defendants in an amount sufficient to deter them from future misconduct.

1

2

3

**EIGHTH CLAIM FOR RELIEF**
**Inducing Breach of Contract**
**(Against Higs Tickets, Inc., Higs Citywide Tickets, Inc., and Does 7-10)**

4   104.   Ticketmaster alleges and incorporates by reference all of the

5   preceding paragraphs.

6   105.   At all relevant times, the home page and most other pages on

7   ticketmaster.com have informed users that their use of the website is subject to

8   express terms and conditions set forth in the Terms of Use, and that by continuing

9   past the page in question, they expressly and/or impliedly agree to be bound by

10   those terms.  Users have a reasonable opportunity to review the Terms of Use upon

11   first entering the website, and they also have a reasonable opportunity to review the

12   Terms of Use during their use of the site.  The link to the Terms of Use is displayed

13   in such a manner as to provide consumers with notice of their existence.

14   106.   Ticketmaster is informed and believes, and based thereon alleges,

15   that Does 7-10 expressly assented to the Terms of Use when setting up accounts on

16   ticketmaster.com and when submitting a request to purchase tickets.  Thus,

17   Ticketmaster is informed and believes that Does 7-10 have repeatedly provided

18   their express assent to the Terms of Use.

19   107.   Ticketmaster is informed and believes, and based thereon alleges,

20   that Higs Tickets (which, as defined above, includes both Higs Tickets, Inc. and

21   Higs Citywide Tickets, Inc.) is aware of all of the Terms of Use on

22   ticketmaster.com through the conduct of its principals—defendant John Higgins

23   (and Patrick Higgins as to Higs Tickets, Inc.)—in creating their own Ticketmaster

24   accounts.

25   108.   The Terms of Use prohibit, *inter alia*, the use of bots and other

26   automated devices, abusive use of the website, and exceeding per-customer ticket

27   limits.  These Terms of Use are fair and reasonable.

28

109.   Ticketmaster has performed all conditions, covenants and promises required to be performed by it in accordance with the Terms of Use.

110.   John Higgins, Patrick Higgins, and Does 1-6 have repeatedly and systematically breached the Terms of Use by using, individually or collectively, bots and other automated devices to access the website and buy tickets, and by buying tickets in quantities that exceed per customer ticket limits.  Ticketmaster is informed and believes that, as part of this misuse of Ticketmaster's website, John Higgins, Patrick Higgins, and Does 1-6 repeatedly and systematically requested more than 1000 pages of Ticketmaster's website in applicable 24-hour periods, made more than 800 reserve requests in applicable 24-hour periods, and accessed, reloaded or refreshed transactional events or ticketing pages and made other requests to transactional servers more than once during applicable 3-second intervals.

111.   Does 7-10 knew of the Terms of Use and that those Terms of Use constitute an agreement between Ticketmaster and customers of Does 7-10, including John Higgins, Patrick Higgins, and Does 1-6.  Moreover, Does 7-10 intended to cause their customers, including John Higgins, Patrick Higgins, and Does 1-6, to breach those agreements, or acted in reckless disregard of whether they were causing those customers to breach their agreements with Ticketmaster.

112.   The conduct of Does 7-10 caused their customers, including John Higgins, Patrick Higgins, and Does 1-6, to breach their contracts with Ticketmaster.  In fact, the automated devices provided by Does 7-10 were the means by which John Higgins, Patrick Higgins, and Does 1-6 did in fact breach their contracts with Ticketmaster.

113.   Higs Tickets also knew of the Terms of Use and that those Terms of Use constitute an agreement between Ticketmaster and John Higgins, Patrick Higgins, and Does 1-6.  Higs Tickets intended to cause John Higgins, Patrick Higgins, and Does 1-6 to breach those agreements by providing the infrastructure to

1    use automated devices on Ticketmaster's website—and doing so for the express

2    purpose of profiting from the subsequent resale of the tickets—while knowing or

3    recklessly disregarding that John Higgins, Patrick Higgins, and Does 1-6 would

4    procure those tickets from Ticketmaster in a manner that would violate the Terms

5    of Use.

6        114.   Higs Tickets' conduct caused John Higgins, Patrick Higgins, and

7    Does 1-6 to breach their contracts with Ticketmaster.

8        115.   Ticketmaster has been harmed as a result, and the conduct of Higs

9    Tickets and Does 7-10 was a substantial factor in causing such harm.  The Terms of

10   Use contain a liquidated damages provision described in detail above.

11       116.   Ticketmaster is entitled to liquidated damages from Higs Tickets

12   and Does 7-10 and in accordance with that provision, in an amount to proven at

13   trial when the full extent of the requests for pages on Ticketmaster's website by

14   John Higgins, Patrick Higgins, and Does 1-6 is ascertained.    In addition,

15   Ticketmaster is entitled to compensatory damages, in an amount to be proven at

16   trial, for breaches of the Terms of Use should the liquidated damages provision be

17   unenforceable for any reason.

18       117.   Ticketmaster is informed and believes that the conduct of Higs

19   Tickets and Does 7-10 was undertaken with the intent to injure Ticketmaster, or

20   with a willful and conscious disregard of Ticketmaster's rights, and constitutes

21   clear and convincing evidence of oppression, fraud and malice under California

22   Civil Code Section 3294.   As a result, Ticketmaster is entitled to an award of

23   punitive damages against each of Higs Tickets and Does 7-10 in an amount

24   sufficient to deter them from future misconduct.

25

26

27

28

1

**NINTH CLAIM FOR RELIEF**
**Intentional Interference with Contractual Relations**

2

**(Against Higs Tickets, Inc., Higs Citywide Tickets, Inc., and Does 7-10)**

3        118.   Ticketmaster alleges and incorporates by reference all of the

4    preceding paragraphs.

5        119.   As alleged above, John Higgins, Patrick Higgins, and Does 1-6

6    were bound by the Terms of Use on Ticketmaster's website and at all relevant times

7    Higs Tickets (as defined above) and Does 7-10 were aware that John Higgins,

8    Patrick Higgins, and Does 1-6 were bound by the Terms of Use.  Moreover, at all

9    relevant times, Higs Tickets and Does 7-10 were aware of the content of the Terms

10   of Use.

11       120.   The Terms of Use prohibit, *inter alia*, the use of bots and other

12   automated devices, abusive use of the website, and exceeding per-customer ticket

13   limits.  These Terms of Use are fair and reasonable.

14       121.   Ticketmaster has performed all conditions, covenants and promises

15   required to be performed by it in accordance with the Terms of Use.

16       122.   By marketing and selling automated devices to circumvent

17   Ticketmaster's security devices and providing tools and assistance to their

18   customers to enable them to inundate Ticketmaster's website with requests and

19   excess ticket purchases, Does 7-10 intended to disrupt the performance of the

20   contracts between Ticketmaster and John Higgins, Patrick Higgins, and Does 1-6,

21   or acted in reckless disregard of whether they would disrupt the performance of

22   those contracts.

23       123.   By providing the infrastructure to John Higgins, Patrick Higgins,

24   and Does 1-6 to use automated devices on Ticketmaster's website, and doing so for

25   the express purpose of profiting from the subsequent resale of the tickets that were

26   procured through the use of automated devices, Higs Tickets intended to disrupt the

27   performance of the contracts between Ticketmaster and John Higgins, Patrick

28

1   Higgins, and Does 1-6, or acted in reckless disregard of whether it would disrupt

2   the performance of those contracts.

3       124.   John Higgins, Patrick Higgins, and Does 1-6 have repeatedly and

4   systematically breached the Terms of Use by using, or cooperating in the use of,

5   bots and other automated devices to access the website and buy tickets, and by

6   purchasing tickets in quantities that exceed per customer ticket limits. Ticketmaster

7   is informed and believes, and on that basis alleges, that as part of this misuse of

8   Ticketmaster's website, John Higgins, Patrick Higgins, and Does 1-6 repeatedly

9   and systematically requested more than 1000 pages of Ticketmaster's website in

10  applicable 24-hour periods, made more than 800 reserve requests in applicable 24-

11  hour periods, and accessed, reloaded or refreshed transactional events or ticketing

12  pages and made other requests to transactional servers more than once during

13  applicable 3-second intervals.

14      125.   The conduct of Higs Tickets and Does 7-10 made it substantially

15  more difficult and expensive for Ticketmaster to perform under those contracts. As

16  alleged in more detail in Paragraphs 46-51 above, these violations have damaged

17  Ticketmaster by, among other things, diminishing the inventory of tickets available

18  through Ticketmaster to legitimate consumers, causing artificially high levels of

19  tickets to be placed on reserve and thereby interfering with the transmission of real

20  time sales information to Ticketmaster's clients, bypassing required website entry

21  and exit points, which directly and indirectly reduces integral revenue

22  opportunities, altering website security features through manipulation of request

23  limit monitoring, requiring Ticketmaster to undertake extraordinary actions to

24  monitor and enhance website infrastructure, and significantly increasing costs of

25  data storage, computer processing, troubleshooting and system maintenance. Thus,

26  the conduct of Higs Tickets and Does 7-10 was a substantial factor in causing harm

27  to Ticketmaster.

28

126. The Terms of Use contain a liquidated damages provision described in detail above. Ticketmaster is entitled to liquidated damages from Higs Tickets and Does 7-10 in accordance with that provision, in an amount to proven at trial when the full extent of the requests for pages on Ticketmaster's website by John Higgins, Patrick Higgins, and Does 1-6 is ascertained. In addition, Ticketmaster is entitled to compensatory damages, in an amount to be proven at trial, for breaches of the Terms of Use should the liquidated damages provision be unenforceable for any reason.

127. Ticketmaster is informed and believes that the conduct of Higs Tickets and Does 7-10 was undertaken with the intent to injure Ticketmaster, or with a willful and conscious disregard of Ticketmaster's rights, and constitutes clear and convincing evidence of oppression, fraud and malice under California Civil Code Section 3294. As a result, Ticketmaster is entitled to an award of punitive damages against each of Higs Tickets and Does 7-10 in an amount sufficient to deter them from future misconduct.

WHEREFORE, Ticketmaster respectfully requests that the Court:

1. Enjoin all Defendants from:

    a. infringing or assisting any other person in infringing Ticketmaster's rights in its copyrighted ticketmaster.com website works as set forth herein by copying pages from that website in excess of the scope of the license granted by the ticketmaster.com Terms of Use;

    b. manufacturing, adapting, modifying, exchanging, distributing, creating, importing, trafficking in, or using any bots, programs or other technology, products, services, devices, components, or parts thereof to circumvent the technological measures by which Ticketmaster controls access to its website;

    c. accessing, visiting, purchasing tickets on, facilitating the purchase of tickets on, or otherwise using ticketmaster.com for any purpose that is

1  in excess of the agreement formed by the Terms of Use by which users are

2  permitted to visit that website;

3          d.    using, or causing, urging or assisting any other person to

4  use, automated means such as bots to access Ticketmaster's website;

5          e.    using, or causing, urging or assisting any other person to

6  use, any program that is designed to circumvent security measures such as

7  CAPTCHA to attempt to access Ticketmaster's website;

8          f.    designing, selling or marketing any program or device

9  that is designed to provide an automated means of accessing Ticketmaster's website

10  or that is designed to circumvent security measures such as CAPTCHA on

11  Ticketmaster's website;

12          g.    soliciting the design, purchase, sale or use of any program

13  or device that is designed to provide an automated means of accessing

14  Ticketmaster's website or that is designed to circumvent security measures such as

15  CAPTCHA on Ticketmaster's website;

16          h.    purchasing, selling, transferring or acquiring any program

17  or device that is designed to provide an automated means of accessing

18  Ticketmaster's website or that is designed to circumvent security measures such as

19  CAPTCHA on Ticketmaster's website;

20          i.    abusing Ticketmaster's website in any way, such as

21  exceeding limits in the Terms of Use for requesting web pages and making requests

22  to transactional servers more than once during any three-second interval;

23          j.    purchasing tickets in excess of per customer and per event

24  ticket limits; and

25          k.    reselling any tickets obtained through Ticketmaster that

26  were not obtained legitimately in accordance with the Terms of Use;

27          2.    Order that Defendants be required to:

28

1         a.    account for, hold in constructive trust, pay over to

2  Ticketmaster, and otherwise disgorge all profits derived by Defendants from their

3  individual and collective misconduct as alleged herein; and

4         b.    pay to Ticketmaster the costs of this action, together with

5  reasonable attorneys' fees and disbursements, in accordance with federal and

6  California law, including but not limited to 17 U.S.C. Sections 505 and 1203;

7         3.    Award to Ticketmaster liquidated, compensatory, statutory and

8  punitive damages; and

9         4.    Award to Ticketmaster all further relief, as the Court deems just

10  and equitable.

11

12  Dated:  October 15, 2013               MANATT, PHELPS & PHILLIPS, LLP

13                                     ROBERT H. PLATT
                                      MARK S. LEE

14                                     DONALD R. BROWN

15

16                     By: _____

17                           Robert H. Platt
                            Attorneys for *Plaintiff*
                            TICKETMASTER L.L.C.

18

19

20

21

22

23

24

25

26

27

28

1

## JURY DEMAND

2     Ticketmaster demands a jury trial in this action.

3

4   Dated:  October 15, 2013           MANATT, PHELPS & PHILLIPS, LLP

                                    ROBERT H. PLATT

5                               MARK S. LEE

                                  DONALD R. BROWN

6

7

8                       By:  _____

                               Robert H. Platt

9                               Attorneys for *Plaintiff*

                               TICKETMASTER L.L.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

# EXHIBIT A



**ticketmaster®**   🛒 STORE   📷 PICS & VIDEOS        The new marketplace to buy & sell verified tickets! BETA    Help

# ticketmaster®

Enter Artist, Team, or Venue 🔍

Category ▾    Ticket Deals              📍 United States ▾   My Account ▾   🛒 0

**Delivery, Returns & More**

Print Your Tickets
Delivery Options
Refund & Exchange Policy
Lost or Destroyed Tickets

**Using Your Account**

Sign In or Create Account
View Your Order History
Forgot Your Password?
Edit Profile
Edit Preferences
Edit Billing Info

**Buying Tickets**

Order Online
Order by Phone
Ticketmaster Retail Outlets
Ticket Tips
Accessible Seating

**We're Here To Help**

Read All FAQs
Correct Your Order
Closing Your Account
Contact Us

**Policies and Security**

Terms of Use
Purchase Policy
Privacy Policy
AdChoices

**Who We Are**

About Ticketmaster
Our Fan Guarantee
Ticketmaster Blog
Across the Globe
Careers
Ticketmaster Logos

**Be A Part of It**

Ticket Your Event

## Terms of Use

Last Updated: July 19, 2013

Welcome! The following are the terms of use ("Terms") that govern your use of the Ticketmaster sites and applications where this appears (collectively, the "Site"). Our Privacy Policy, Purchase Policy, and any other policies, rules or guidelines that may be applicable to particular offers or features on the Site are also incorporated into these Terms. By visiting or using the Site, you expressly agree to these Terms, as updated from time to time.

We may make changes to these Terms at any time. Any changes we make will be effective immediately when we post a revised version of these Terms on the Site. The 'Last Updated' date above will tell you when these Terms were last revised. By continuing to use this Site after that date, you agree to the changes.

The Site is not intended for children under the age of 13 and no person under the age of 13 may use the Site. We strongly encourage all parents and guardians to monitor the Internet use by their children. If you use the Site, you affirm you are at least 13 years old.

**Account Registration**
You may browse the Site without registering for an account. You will be required to register for an account to use certain features of the Site, such as purchasing a ticket. Your account username may not include the name of another person with the intent to impersonate that person, or be offensive, vulgar or obscene. Your account username and password are personal to you. You will be responsible for the confidentiality and use of your username and password, and for all activities (including purchases) that are conducted through your account. You may not transfer or sell access to your account. We will not be liable for any harm related to disclosure of your username or password or the use by anyone else of your username or password. You may not use another user's account without that user's permission. You will immediately notify us in writing if you discover any unauthorized use of your account or other account-related security breach. We may require you to change your username and/or password if we believe your account is no longer secure or if we receive a complaint that your username violates someone else's rights. You will have no ownership in your account or your username. We may refuse registration, cancel an account or deny access to the Site for any reason.

**Code of Conduct**
You agree that you will comply with all applicable laws, rules and regulations, and that you will not:

- Restrict or inhibit any other person from using the Site;

- Use the Site for any unlawful purpose;

- Express or imply that any statements you make are endorsed by us, without our prior written consent;

- Impersonate any person or entity, whether actual or fictitious, including any employee or representative of our company;

- Submit (a) any content or information that is unlawful, fraudulent, libelous, defamatory, or otherwise objectionable, or infringes our or any third party's intellectual property or other rights; (b) any non-public information about companies without authorization; or (c) any advertisements, solicitations, chain letters, pyramid schemes, surveys, contests, investment opportunities or other unsolicited commercial communication;

- Submit, or provide links to, any postings containing material that could be considered harmful, obscene, pornographic, sexually explicit, indecent, lewd, violent, abusive, profane, insulting, threatening, harassing, hateful or otherwise objectionable, includes the image or likeness of individuals under 18 years of age, encourages or otherwise depicts or glamorizes drug use (including alcohol and cigarettes), characterizes violence as acceptable, glamorous or desirable, or contains any personal contact information or other personal information identifying any third party;

- Submit, or provide links to, any postings containing material that harasses, victimizes, degrades, or intimidates an individual or group of individuals on the basis of religion, race, ethnicity, sexual orientation, gender, age, or disability;

- Engage in spamming or flooding;

- Harvest or collect information about Site users;

- Order a number of tickets for an event that exceeds the stated limit for that event;

- Use any password or code to participate in a presale or other offer on the Site if you did not receive the password or code from us or if you violate the terms of the presale or offer; or

- Use any area of the Site for commercial purposes, such as to conduct sales of tickets, products or services.

**Ownership of Content and Grant of Conditional License**
The Site and all data, text, designs, pages, print screens, images, artwork, photographs, audio and video clips, and HTML code, source code, or software that resides on is viewable or otherwise discoverable on the Site (collectively, the 'Content') is owned by us or our licensors. We own a copyright in the Site and Content. We may change the Content and features of the Site at any time.

We grant you a limited, conditional, no-cost, non-exclusive, non-transferable, non-sub-licensable license to view this Site and its Content to purchase tickets as permitted by these Terms for non-commercial purposes only if, as a condition precedent, you agree that you will not:

- Submit any software or other materials that contain any viruses, worms, Trojan horses, defects, date bombs, time bombs or other items of a destructive nature;

- Manipulate identifiers, including by forging headers, in order to disguise the origin of any posting that you submit;

- Link to any portion of the Site other than the URL assigned to the home page of our Site;

- 'Frame' or 'mirror' any part of the Site;

- Modify, adapt, sub-license, translate, sell, reverse engineer, decompile or disassemble any portion of the Site or otherwise attempt to derive any source code or underlying ideas or algorithms of any part of the Site;

- Remove any copyright, trademark or other proprietary rights notices contained on the Site;

- Use any robot, spider, offline reader, site search/retrieval application or other manual or automatic device, tool or process to retrieve, index, data mine or in any way reproduce or circumvent the navigational structure or presentation of the Site or its contents, including with respect to any CAPTCHA displayed on the Site. Operators of public search engines may use spiders to copy materials from the Site for the sole purpose of and solely to the extent necessary for creating publicly available searchable indices of the materials, but not caches or archives of such materials. We may revoke this exception at any time;

- Use any automated software or computer system to search for, reserve, buy or otherwise obtain tickets, tm ticket cash™, promotional codes, vouchers, gift cards or any other items available on the Site, including sending information from your computer to another computer where such software or system is active;

- Take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our infrastructure;

- Access, reload or refresh transactional event or ticketing pages, or make any other request to transactional servers, more than once during any three-second interval.

37

- Request more than 1,000 pages of the Site in any 24-hour period, whether alone or with a group of individuals.

- Make more than 800 reserve requests on the Site in any 24-hour period, whether alone or with a group of individuals.

- Reproduce, modify, display, publicly perform, distribute or create derivative works of the Site or the Content;

- Use the Site or the Content in an attempt to, or in conjunction with, any device, program or service designed to circumvent any technological measure that effectively controls access to, or the rights in, the Site and/or Content in any way including, without limitation, by manual or automatic device or process, for any purpose.

This license is expressly conditioned on your preexisting agreement to comply with, and your actual compliance with, each of the provisions described in this Ownership of Content and Grant of Conditional License section. This license exists only so long as you strictly comply with each of the provisions described in this section. Any use of the Site or Content by you or anyone acting on your behalf that does not strictly comply with each and every provision in this section exceeds the scope of the license granted to you herein, constitutes unauthorized reproduction, display, or creation of unauthorized derivative versions of the Site and Content, and infringes our copyrights and other rights in the Site and Content. You will not acquire any ownership rights by using the Site or the Content.

The registered and unregistered trademarks, logos and service marks displayed on the Site are owned by us or our licensors. You may not use our trademarks, logos and service marks in any way without our prior written permission. You may inquire about obtaining permission by writing:

Live Nation Entertainment, Inc.
9348 Civic Center Drive
Beverly Hills, CA 90210
Attn: Trademark Department, Legal
copyrightofficer@livenation.com

**Making Purchases**
Please review our Purchase Policy, which will govern your purchase of any tickets or other products through the Site, including any refunds or exchanges. We may impose conditions on your use of any coupon, promotional code or gift card. You will pay all charges incurred by you or any users of your account and credit card (or other applicable payment mechanism) at the price(s) in effect when such charges are incurred, including any applicable fees. When you only use credit or debit cards, gift cards or vouchers that belong to you or to people who expressly authorize you to use such payment methods. You may use the ticket cash™ only in accordance with the Code Terms of Use found at Ticketmaster.com/ticketcash. You may not attempt to conceal your identity by using multiple Internet Protocol addresses or email addresses to conduct transactions on the Site. You will not hold us liable if you do not comply with laws related to your transactions. We may provide law enforcement with information you provide to us related to your transactions to assist in any investigation or prosecution of you. If we are unable to verify or authenticate any information or tickets you provide during any registration, ordering, purchase, ticket posting, sale, authentication, delivery, payment or remittance process, or any other process, or if we are no longer able to verify or authorize your credit card or bank account information, your tickets may be cancelled, we may refuse to honor all pending and future ticket purchases made with those credit card or bank accounts and/or via any online accounts associated with those credit card or bank accounts. We may also prohibit you from using the Site.

**Forums and User Content**
We may host fan reviews, message boards, blog feeds, social media feeds and other forums found on the Site (collectively, 'Forums'), and you may be able to submit suggestions, reviews, concepts, audio and video recordings, photographs, artwork or other materials to the Forums or other areas of the Site ('User Content').

By submitting User Content, you certify that you are at least 18 years old, or you are at least 13 years old and have obtained your parent's or legal guardian's express consent to submit User Content.

You own all rights to your User Content. If you submit User Content to the Site, you grant us a worldwide, non-exclusive, transferable, sublicenseable, royalty-free right and license to use, reproduce, modify, create derivative works of, distribute, publicly perform, display, archive and commercialize your User Content, in our sole discretion, in all formats and in all media channels now known or hereinafter discovered, without any compensation or acknowledgment to you or anyone else. This license will not affect your ownership in your User Content, including the right to grant additional licenses to your User Content, except if it conflicts with these Terms. We are not obligated to post, display or otherwise use any User Content, or to attribute your User Content to you. You will not make or authorize any claim against us that our use of your User Content infringes any of your rights.

Statements, opinions and reviews posted by participants in a Forum may be inaccurate, offensive, obscene, threatening or harassing. We do not endorse and are not responsible for these postings. We will not be liable for any loss or harm caused by the posting or your reliance on information obtained through the postings.

You will be responsible for your User Content and the consequences of posting it. By submitting User Content, you represent to us that (i) you own, or have the necessary permission to submit the User Content and to grant the licenses to us under this section, and (ii) you have the written permission of every identifiable person in the User Content to use that person's name and likeness in the manner contemplated by the Site and these Terms or, if the person is a minor, the written permission of the minor's parent or legal guardian.

We will have the right (but not the obligation) to monitor the Site, the Forums and the User Content, and to disclose any User Content and the circumstances surrounding its submission in order to operate the Site properly, or to protect ourselves, our sponsors and our users, or to comply with legal obligations or governmental requests.

If we are notified that your User Content does not comply with these Terms, we may investigate the allegation and may decide to remove your User Content and cancel your account.

**Claims of Copyright Infringement On The Site**
Under the Digital Millennium Copyright Act of 1998 (the 'DMCA') if you believe in good faith that any content on the Site infringes your copyright, you may send us a notice requesting that the content be removed. The notice must include: (a) your (or your agent's) physical or electronic signature; (b) identification of the copyrighted work on our Site that is claimed to have been infringed (or a representative list if multiple copyrighted works are included in one notification); (c) identification of the content that is claimed to be infringing or the subject of infringing activity, including information reasonably sufficient to allow us to locate the content on the Site; (d) your name, address, telephone number and email address (if available); (e) a statement that you have a good faith belief that use of the content in the manner complained of is not authorized by you or your agent or the law; and (f) a statement that the information in the notification is accurate and, under penalty of perjury, that you or your agent is authorized to act on behalf of the copyright owner. If you believe in good faith that a notice of copyright infringement has been wrongly filed against you, you may send us a counter-notice. You may read more information about the DMCA at http://www.fcc.gov/copyright.

Notices and counter-notices should be sent to Copyright Officer, Live Nation Entertainment, Inc., 9348 Civic Center Drive, Beverly Hills, CA 90210, copyrightofficer@livenation.com. There can be penalties for false claims under the DMCA. We suggest that you consult your legal advisor before filing a notice or counter-notice.

**Links**
The Site contains links to other websites that may not be owned or operated by us. The fact that we may link to those websites does not indicate any approval or endorsement of those websites. We have no control over those websites. We are not responsible for the content of those websites, or the privacy practices of those websites. We strongly encourage you to become familiar with the terms of use and practices of any linked website. Your use of other websites is at your own risk and is subject to the terms of those websites. It is up to you to take precautions to ensure that whatever links you select or software you download (whether from the Site or other sites) is free of viruses, worms, Trojan horses, defects, date bombs, time bombs and other items of a destructive nature.

**Parental Controls**
We cannot prohibit minors from visiting our Site, and must rely on parents and guardians to decide what materials are appropriate for children to view and purchase. There are parental control protections (such as computer hardware, software or filtering services) available that may assist you in limiting access to material that is harmful to minors. You can find information about parental controls at http://onguardonline.gov and http://kids.getnetwise.org. We do not endorse the products or services listed at these websites.

**Access from Outside the United States**
The Site is directed to people residing in the United States. We do not represent that Content available on or through the Site is appropriate or available in other locations. We may limit the availability of the Site or any service or product described on the Site to any person or geographic area at any time. If you choose to access the Site from outside the United States, you do so at your own risk.

**Rules for Sweepstakes, Contests and Games**
In addition to these Terms, sweepstakes, contests, games or other promotions (collectively, 'Promotions') made available through the Site may have specific rules that are different from these Terms. By participating in a Promotion, you will become subject to those rules. We urge you to review the rules before you participate in a Promotion. Promotion rules will control over any conflict with these Terms.

**Mobile Messaging**
We offer browsing and mobile messaging services which may include alerts, sweepstakes and offers for products. Mobile messaging is provided by Mozes, Inc. You may choose to receive mobile alerts by signing up or participating in a Promotion. If you do, you will also be subject to the Mozes terms of service located at http://www.mozes.com/product/terms-of-service. You may receive up to 5 messages per month.



Message and data rates may apply, according to your rate plan provided by your wireless carrier. We will not be responsible for any text messaging or other wireless charges incurred by you or by a person who has access to your wireless device or telephone number. You may not receive our alerts if your carrier does not permit text alerts. Your carrier may not allow you to use pre-paid phones or calling plans to receive alerts. We may send you a bounce back message for every message you send to us. Service may not be compatible with all wireless carriers or devices.

You may opt out of any alerts by replying with the text message "STOP" or by sending the text message "STOP" to the shortcode provided. You may also opt out of receiving text messages from us by sending the text message "STOP" to 842536. If you opt by sending us a text message, we will send you a text to confirm your request. If you do not want to receive a confirmation text message, you may opt out by email or phone at the address or phone number listed at the end of this paragraph. It may take us up to 10 days to remove your mobile device number from our database. For additional help, text "HELP" to 842538, email support@mozes.com or call 888-281-7542.

We are not responsible for the accuracy of any information displayed in our mobile messaging, for any misdelivery or untimely delivery of any mobile messaging, or your deletion or failure to store any mobile messaging from us.

**Mobile Device Application**

If you install or use our mobile application, software and services, including any accompanying documentation (collectively, "App"), we grant you a limited right to install and use the App on a single authorized device located in the United States and its territories or in another country where we may offer the App. You may use the App for your personal, non-commercial and entertainment purposes only. You agree to also comply with Apple's App Store Terms of Service, which you can find at http://www.apple.com/legal/itunes/us/terms.html#SERVICE. We do not grant you any rights to any related documentation, support, upgrades, maintenance or other enhancements to the App. We will not provide you with any device, internet access or wireless connection to use the App. We are not responsible for any interaction between you and another App user, or information you transmit through the App (including your location).

**Violation of these Terms**

We may investigate any violation of these Terms, including unauthorized use of the Site. We may take legal action that we feel is appropriate. You agree that monetary damages may not provide us a sufficient remedy and that we may pursue injunctive or other relief for your violation of these Terms. If we determine that you have violated these Terms or the law, or for any other reason or for no reason, we may cancel your account, delete all your User Content and prevent you from accessing the Site at any time without notice to you. If that happens, you may no longer use the Site or any Content. You will still be bound by your obligations under these Terms. You agree that we will not be liable to you or any third party for termination of your access to the Site or to your account or any related information, and we will not be required to make the Site or your account or any related information available to you. We may also cancel any ticket or merchandise order, and tickets or merchandise acquired through your order. We may refuse to honor pending and future purchases made from all accounts we believe may be associated with you, or cancel a ticket or ticket order associated with any person we believe to be acting with you, or cancel your ticket postings, or exercise any other remedy available to us.

You agree that your abusive use of the Site may cause damage and harm to us, including impaired goodwill, lost sales and increased expenses. You also agree that monetary damages for your abusive use of the Site are difficult to determine and that if you, or others acting with you, request more than 1,000 pages of the Site or make more than 800 reserve requests on the Site in any 24-hour period, you, and those acting with you, will be jointly and severally liable for liquidated damages in the amount of twenty-five cents ($0.25) for each page request or reserve request made during that 24-hour period which exceeds these limits.

**Disclaimer of Warranties**

WE PROVIDE THE SITE AND THE CONTENT TO YOU "AS IS" AND "AS AVAILABLE". WE TRY TO KEEP THE SITE UP, BUG-FREE AND SAFE, BUT YOU USE IT AT YOUR OWN RISK. TO THE FULLEST EXTENT PERMISSIBLE BY LAW, WE DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF TITLE, NONINFRINGEMENT, ACCURACY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR WARRANTIES THAT MAY ARISE FROM COURSE OF DEALING OR COURSE OF PERFORMANCE OR USAGE OF TRADE. WE DO NOT GUARANTEE THAT THE SITE WILL ALWAYS BE SAFE, SECURE OR ERROR-FREE OR THAT THE SITE WILL ALWAYS FUNCTION WITHOUT DISRUPTIONS, DELAYS OR IMPERFECTIONS. WE ARE NOT RESPONSIBLE FOR THE ACTIONS OR INFORMATION OF THIRD PARTIES, AND YOU RELEASE US FROM ANY CLAIMS AND DAMAGES, KNOWN AND UNKNOWN, ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY CLAIM YOU HAVE AGAINST ANY SUCH THIRD PARTIES. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO SOME OF THESE EXCLUSIONS MAY NOT APPLY TO YOU. IF YOU ARE A CALIFORNIA RESIDENT, YOU WAIVE CALIFORNIA CIVIL CODE §1542, WHICH SAYS: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

**Limitation of Liability**

IN NO EVENT WILL WE OR OUR EVENT PROVIDERS, SUPPLIERS, ADVERTISERS AND SPONSORS, BE RESPONSIBLE OR LIABLE TO YOU OR ANYONE ELSE FOR, AND YOU HEREBY KNOWINGLY AND EXPRESSLY WAIVE ALL RIGHTS TO SEEK, DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY TYPE OTHER THAN OUT OF POCKET EXPENSES, AND ANY RIGHTS TO HAVE DAMAGES MULTIPLIED OR OTHERWISE INCREASED, ARISING OUT OF OR IN CONNECTION WITH THE SITE, THE CONTENT, OR ANY PRODUCT OR SERVICE PURCHASED THROUGH THE SITE, EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND REGARDLESS OF WHETHER THE CLAIM IS BASED UPON ANY CONTRACT, TORT, OR OTHER LEGAL OR EQUITABLE THEORY. WITHOUT LIMITING THE FOREGOING, YOU EXPRESSLY ACKNOWLEDGE AND AGREE THAT WE WILL HAVE NO LIABILITY OR RESPONSIBILITY WHATSOEVER FOR (a) ANY FAILURE OF ANOTHER USER OF THE SITE TO CONFORM TO THE CODES OF CONDUCT; (b) PERSONAL INJURY OR PROPERTY DAMAGE, OF ANY NATURE WHATSOEVER, WHETHER ARISING IN CONTRACT OR IN TORT, RESULTING FROM YOUR ACCESS TO AND USE OF OUR SITE; (c) ANY UNAUTHORIZED ACCESS TO OR USE OF OUR SECURE SERVERS AND/OR ANY AND ALL PERSONAL INFORMATION AND/OR FINANCIAL INFORMATION STORED THEREIN; (d) ANY BUGS, VIRUSES, WORMS, TROJAN HORSES, DEFECTS, DATE BOMBS, TIME BOMBS OR OTHER ITEMS OF A DESTRUCTIVE NATURE WHICH MAY BE TRANSMITTED TO OR THROUGH OUR SITE; (e) ANY ERRORS, MISTAKES, INACCURACIES OR OMISSIONS IN ANY CONTENT; OR (f) ANY LOST, STOLEN OR DAMAGED TICKETS, OR THE FAILURE OF A VENUE TO HONOR A TICKET. YOUR SOLE AND EXCLUSIVE REMEDY FOR DISSATISFACTION WITH THE SITE IS TO STOP USING THE SITE. THE LIMITATIONS IN THIS SECTION WILL APPLY EVEN IF ANY LIMITED REMEDY FAILS OF ITS ESSENTIAL PURPOSE. THE ALLOCATION OF RISK BETWEEN US IS AN ESSENTIAL ELEMENT OF THE BASIS OF THE BARGAIN BETWEEN US. OUR AGGREGATE LIABILITY ARISING OUT OF THESE TERMS OR THE USE OF THE SITE WILL NOT EXCEED THE GREATER OF ONE HUNDRED DOLLARS ($100) OR THE AMOUNT YOU HAVE PAID US IN THE PAST TWELVE MONTHS. SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF DAMAGES, SO THESE MAY NOT APPLY TO YOU. IN SUCH CASES, OUR LIABILITY WILL BE LIMITED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW. IN NO EVENT WILL ATTORNEYS' FEES BE AWARDED OR RECOVERABLE.

**Indemnification**

If anyone brings a claim against us related to your use of the Site, your User Content or your violation of these Terms, you agree to indemnify, defend and hold us and our affiliated companies, event providers, suppliers, advertisers and sponsors, and each of our officers, directors, employees, and agents, harmless from and against any and all claims, damages, losses and expenses of any kind (including reasonable legal fees and costs). We reserve the right to assume exclusive control and defense of any claim, and you will cooperate fully with us in asserting any available defenses.

**Disputes, including Mandatory Arbitration and Class Action Waiver**

Any dispute or claim relating in any way to your use of the Site, or to products or services sold or distributed by us or through us, will be resolved by binding arbitration rather than in court, with the following exceptions:

- You may assert claims in small claims court if your claims apply;

- If a claim involves the conditional license granted to you as described in the Ownership of Content and Grant of Conditional License section above, either of us may file a lawsuit in a federal or state court located within Los Angeles County, California, and we both consent to the jurisdiction of those courts for such purposes; and

- In the event that the arbitration agreement in these Terms is for any reason held to be unenforceable, any litigation against us (except for small-claims court actions) may be commenced only in a federal or state court located within Los Angeles County, California, and we both consent to the jurisdiction of those courts for such purposes.

The arbitration agreement in these Terms is governed by the Federal Arbitration Act, including its procedural provisions. It is intended to be broadly interpreted, and will survive termination of these Terms. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow these Terms as a court would.

To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to: Live Nation Entertainment, Inc., 9348 Civic Center Drive, Beverly Hills, CA 90210, Attn: Legal. You may download the forms located at http://www.jamsadr.com/files/Uploads/Documents/JAMS_Arbitration_Demand.doc. The arbitration will be conducted by JAMS under its Streamlined Arbitration Rules and Procedures or, if applicable, its Comprehensive Arbitration Rules and Procedures, and any applicable supplemental rules including its Consumer Arbitration Standards of Minimum Fairness. The JAMS Rules are available online at http://www.jamsadr.com/rules-clauses or by calling 1-800-352-5267. Payment of all filing, administration and arbitrator fees will be governed by JAMS's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous, but in no event will we pay for attorneys' fees. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location.

We each agree that the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding; and that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. **You agree to waive any right to a jury trial or to participate in a class action. If this specific provision is found to be unenforceable, then the entirety of this arbitration section will be null and void and neither of us will be entitled to arbitrate our dispute.**

You agree that these Terms evidence a transaction involving interstate commerce and will be governed by and construed in accordance with federal law to the fullest extent possible. However, if your dispute is regarding the re-sale of a ticket made through TicketExchange for any event located in Illinois, then these Terms will be governed and construed in accordance with the laws of Illinois, without regard to conflict or choice of law rules, and you consent to personal jurisdiction, and agree to bring all actions, exclusively in Chicago, Illinois. If you have an inquiry regarding a ticket re-sale transaction made through TicketExchange for any event located in Illinois, please contact us at 550 W. Van Buren Street, 13th Floor, Chicago, Illinois 60607 or (877) 446-9450 or ticketexchange@ticketmaster.com.

**No Reliance and Forward-Looking Statements**
The information contained on the Site may not be current and should not be used or relied on for any investment decision regarding our securities or for any similar purpose. We file annual, quarterly and current reports, proxy statements and other information with the United States Securities and Exchange Commission ("SEC"). Copies of our filings are available at the Investor Relations section of this Site and also at the SEC's website at www.sec.gov.

Statements on the Site regarding our financial condition, results of operations and business and our expectations or beliefs concerning future events that are not historical facts are "Forward-Looking Statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Use of the words "believes," "expects," "anticipates," "plans," "estimates" or words of similar meaning is intended to identify Forward-Looking Statements but is not the exclusive means of identifying such statements. We caution you that there are some known and unknown factors that could cause actual results to differ materially from any future results, performance or achievements expressed or implied by such Forward-Looking Statements, including but not limited to economic, competitive, governmental and technological factors affecting our operations; markets; products, services and prices; as well as the risks and uncertainties set forth in the documents we file with the SEC, specifically the section titled "Item 1A. Risk Factors" of our most recent Annual Report on Form 10-K and Quarterly Reports on Form 10-Q and Current Reports on Form 8-K. We do not undertake any obligation to publicly update or revise any Forward-Looking Statements because of new information, future events or otherwise.

**Questions**
If you have any questions, comments or complaints regarding these Terms or the Site, please contact us at:

Live Nation Entertainment, Inc.
9348 Civic Center Drive
Beverly Hills, CA 90210
(800) 653-8000
Email

California users may also contact the Complaint Assistance Unit of the Division of Consumer Services, California Department of Consumer Affairs, located at 1625 North Market Blvd., Sacramento, CA 95834, (800) 952-5210.

© 2012 Live Nation Entertainment, Inc. All rights reserved.

**FOLLOW US**
Facebook
Twitter
Google Plus

**DOWNLOAD APP**
iPhone & Android

**ABOUT US**
Who We Are
Our Fan Guarantee
Ticketmaster Blog
Across the Globe
Retail Outlets
Careers

**WE'RE HERE TO HELP**
Your Account
Print Tickets
Refund Policy
Shipping Options
Help

**OUR NETWORK**
Live Nation
House of Blues
TicketWeb
SME Entertainment

**BE A PART OF IT**
Ticket Your Event
Custom Tickets


ticketmaster

BY CONTINUING PAST THIS PAGE, YOU AGREE TO OUR  TERMS OF USE.

INTERNATIONAL  Canada  UK  Ireland  Spain  Mexico  Australia  More   PARTNERS  American Express  NBA  NFL  NHL  SLO VIP Services
Site Map  Privacy Policy

® 1999-2013 Ticketmaster. All rights reserved.

TRUSTe

**EXHIBIT  B**

# EXHIBIT B

5:27:54 PM 10/10/2013

# ticketmaster ®

## Create Account

Already have a Ticketmaster® account?

**Log In**

* = Required Text

First Name*

E-mail Address*

Retype E-mail Address*

Type Password*                    Type Password 5-12 characters

Retype Password*

Country of Residence*             United States Of America

Zip Code *

By completing this registration form, you indicate that you consent to Ticketmaster using and disclosing the information you submit, as described in the Ticketmaster Privacy Policy. Use of your information collected in connection with a ticket purchase or auction bid will also be disclosed to you at the time of purchase or bid per Ticketmaster privacy policies relevant to the country where the event takes place.

As a user of this web site, you agree that you are subject to this web site's Terms of Use.

**Accept and Continue**

© 1999-2013 Ticketmaster. All rights reserved.

TRUSTe

1/1

**EXHIBIT C**

# EXHIBIT C

# ticketmaster®

| REVIEW | DELIVERY | SIGN IN | **PAYMENT »** |

Note: The timer at bottom right shows how long you have to complete this page before we release your tickets for others to buy. Your transaction is not initiated until you click the "Submit Order" button.



**Los Angeles Kings vs.**
**Columbus Blue Jackets**
STAPLES Center, Los Angeles, CA
Fri, Feb 15, 2013 07:30 PM

| | |
|---|---|
| Section | 322 |
| Row | 7 |
| Seats | 4 |
| Description | Price Level 16 |
| | UPPER CONCOURSE 300'S |
| | Seating Chart |

| | |
|---|---|
| Type | Full Price Adult |
| Ticket Price | U.S. $45.00 × 1 |
| Convenience Charge | U.S $7.50 × 1 |

**SUBTOTAL   US $52.50**

| | |
|---|---|
| **Tickets/Items** | U.S $52.50 |
| **Order Processing Fee** | U.S $5.65 |
| Delivery via: **TicketFast Delivery** | U.S $2.50 |

**TOTAL CHARGES   US $60.65**

## Select Payment Method

🎁 Gift Card   Redeem Now
You can redeem up to 5 Gift Cards per order.

**Select Payment Method**       **Payment Details**

🔘 Credit Card              Select Credit Card        Credit Card Number      Expiration Date        Security Code
   VISA MasterCard DISCOVER       Select Card Type ▾                           Month ▾   Year ▾

**Redeem Membership Rewards Points from American Express®**

☐ YES, I would like to redeem Membership Rewards points for this order.
AMERICAN EXPRESS   You will be prompted to enter the 4-digit American Express security code located on the front of your card to check and
MEMBERSHIP REWARDS®   redeem your Membership Rewards Points.

**To Qualify:** You must use an American Express® Card enrolled in the U.S. Membership Rewards program for this purchase. Corporate Cards are ineligible. Initially, your American Express Card will be charged US $60.65 for this purchase. Once your Membership Rewards account has been verified you will be able to choose the number of points to redeem and American Express will credit your Card accordingly. If the minimum points are not available, the Card will remain charged and you will not receive a credit from American Express. By selecting this payment option, you agree to these additional terms and conditions.

**Time left to complete page**
**09:41**

42

**Enter Billing Address**

Your order may be cancelled without notice if you do not use the exact billing address of your credit card.

* = Required Text

Enter the Card Holder first and last name exactly as it appears on your credit card statement.

Card Holder First Name

Card Holder Last Name

Address*                                               Unit #            (Optional)

Address Line 2

City *                                                 Military Address? Enter APO or FPO.

State*                     -- Select State --

Zip Code*

Country *                  United States Of America    Address in a different country?
                                                       Choose a delivery method for your area.

Phone*                                                 e.g 310-555-1212

Mobile Phone

☑ Store my credit card and billing information in our secure system to make future purchases faster and easier. You will have the opportunity later in the process to manage your account settings. Privacy Policy

4/3

**Protect Your Ticket Purchase - Allianz Global Assistance**

Get Event Ticket Insurance from Allianz Global Assistance for an additional $7.00/ticket

If you can't attend this event for any number of covered reasons, including illness, airline delays, traffic accidents and more, you'll be reimbursed for this purchase.

Why is this needed? Event ticket insurance insures your financial investment of the event tickets including taxes and shipping costs (up to the amount of your policy limits) should you not be able to attend the event for a covered reason. Event Ticket Protector insurance does not offer coverage for cancellation due to a personal change of plans.

Coverage also includes parking and other event related items that have been added to your order. Limitations apply. See full Coverage Details. This charge is in addition to the order total displayed above and will be billed separately by Allianz Global Assistance. You may cancel your Event Ticket Insurance within 10 days of the purchase date and receive a full refund of insurance fees paid.

Insurance coverage is underwritten by BCS Insurance Company (OH, Administrative Office: Oakwood Terrace, IL), rated "A-" (Excellent) by A.M. Best Co., under BCS Form No. 52.201 or 52.401 series, or Jefferson Insurance Company (NY, Administrative Office: Richmond, VA), rated "A" (Excellent) by A.M. Best Co., under Jefferson Form No. 102-C or 102-P series, or Jefferson Form No. 105-C series or 105-P series, depending on the insured's state of residence. Allianz Global Assistance is a brand of AGA Service Company. AGA Service Company is the producer and administrator of this plan and an affiliate of Jefferson Insurance Company. The insured shall not receive any special benefit or advantage because of the affiliation between AGA Service Company and Jefferson Insurance Company.

By clicking yes, you authorize Ticketmaster to send your name, address, and credit card information to Allianz Global Assistance, who will charge your card on the terms described above.

 YES, Protect my Ticket Purchase to Los Angeles Kings (Recommended)

○ No.

Product available to residents of all states except WA.

**Submit Order**

By clicking the "Submit Order" button, you are agreeing to the Ticketmaster Purchase Policy and Privacy Policy. All orders are subject to credit card approval and billing address verification. Please contact customer service if you have any questions regarding your order.



Your credit card will be charged.

Cancel Order

BY CONTINUING PAST THIS PAGE, YOU AGREE TO OUR TERMS OF USE

Privacy Policy | ©1999-2013 Ticketmaster. All rights reserved.

TRUSTe

44